# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

BRIAN CHRISTIAN ALEXANDER,

    Plaintiff,

v.                                                                             Case No. 2:18-cv-01516

C.O. SLONE, et al.,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the Motion for Summary Judgment filed by C.O. Slone, C.O. Payne, and Captain Thompson (ECF No. 28). For the reasons stated herein, it is respectfully **RECOMMENDED** that the motion for summary judgment (ECF No. 28) be **GRANTED.**

It is further respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the claim against C.O. Kirkwood pursuant to U.S.C. §§ 1915A and 1915(e)(2)(B) for failure to state a claim upon which relief can be granted. By separate order, the undersigned will address further action with respect to the claims against medical staff members Jessica Thornhill and Nurse Kadee Damron.[1]

---

[1] The court previously dismissed the South Central Regional Jail as a non-suable defendant. (ECF Nos. 6 and 13).

## I.     FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

On December 13, 2018, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging various claims concerning his conditions of confinement while he was incarcerated as a pre-trial detainee at the South Central Regional Jail ("SCRJ") in Charleston, West Virginia.  Specifically, Plaintiff claims that C.O. Slone ("Slone") used excessive physical force against him and sprayed him with chemical agents, that C.O. Kirkwood ("Kirkwood") touched his genitals while removing his underwear, and that C.O. Payne ("Payne") and Captain Thompson ("Thompson") failed to properly investigate these incidents and respond to his grievances/complaints.  (ECF No. 2 at 4-6).  Plaintiff further alleges that medical staff members Jessica Thornhill and Nurse Kadee Damron "denied [him] health care" by refusing to give him medication, which he further claims "started these events" and "was a direct cause of the above actions." (*Id.* at 6-7).

Because Plaintiff is proceeding *in forma pauperis*, the Defendants' summonses were served by the United States Marshals Service ("USMS") pursuant to 28 U.S.C. § 1915(d).  However, on May 15, 2019, the USMS delivered all of the summonses to David Farmer, Assistant Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDOCR"), which was not proper personal service.  (ECF Nos. 7-12).  On June 4, 2019, attorney William Murray essentially waived proper service and filed an Answer on behalf of defendants Slone, Payne, and Thompson (ECF No. 14), but none of the other defendants have appeared herein.  Nevertheless, as they were not properly served, they are not in default.

Following a lengthy period for discovery (which was extended due to Plaintiff's release from custody and issues surrounding the Covid-19 pandemic), defendants Slone, Payne, and Thompson (hereinafter "Defendants") filed the pending motion for summary

judgment (ECF No. 28) on October 1, 2020. Defendants' motion asserts that there is an absence of evidence to demonstrate the essential elements of Plaintiff's claims for relief against Defendants Slone, Payne, and Thompson and that they are entitled to qualified immunity. In support of their motion, Defendants rely on video evidence from the booking and medical areas of the SCRJ on September 20, 2018, as well as incident and investigatory reports surrounding these events involving the Plaintiff.

Pursuant to the holding of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was repeatedly advised of his right and obligation to respond to the motion and of the evidence and materials upon which he could rely to rebut Defendants' evidence, as provided in Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 24, 33, and 35). On June 21, 2021, Plaintiff responded to Defendants' motion (ECF No. 36), attaching his own unsworn and unsigned statement,[2] as well as largely illegible copies of grievance documents, medical records, and photographs of himself, along with some other exhibits that do not appear to be directly material to the issues at hand. The motion is fully briefed and ripe for adjudication.

## II. UNDISPUTED FACTS

At the time of the incidents in question, Plaintiff was a pre-trial detainee at the SCRJ. On September 20, 2018, Plaintiff was escorted to the booking area to be placed on suicide watch. As a requirement of such placement, he was ordered to change into a "suicide smock."

---

[2] Because Plaintiff signed his Complaint under penalty of perjury (ECF No. 2 at 9), it may be considered the equivalent of an affidavit for purposes of summary judgment. However, the statement provided by Plaintiff with his Response (ECF No. 36, Ex. 1) is unsworn and unsigned and is insufficient to rebut Defendants' evidence.

3

Plaintiff suffers from Graves' Disease,[3] a thyroid condition, and claims that he was having chest pains and feeling dizzy throughout this incident. (ECF No. 2 at 4). Plaintiff's Complaint, as further supported by a grievance that he filed following the incident, asserts that he made these complaints to the officers, but was accused of lying. (*Id.*; ECF No. 28, Ex. 2 at 12). He further claims that he was forcefully taken into the bathroom, where no cameras are present, and was assaulted. He claims that Slone (who he does not identify by name in the grievance) "choked [him], punched [him] and rammed [his] head into the wall numerous times" while ordering him to take his clothes off. (ECF No. 2 at 5; ECF No. 28, Ex. 2 at 12). His Complaint further asserts that Slone "ripped his clothes off" while he was on the floor "not resisting" and then directed Kirkwood to "snatch his f*cking underwear off his ass!" (ECF No. 2 at 5). Plaintiff further claims that, in the process of removing his underwear, Kirkwood touched his genitals and exposed them to other staff. (*Id.* at 5-6).

Plaintiff further claims that Slone also sprayed him with a chemical agent while he continued to have chest pains. Plaintiff further alleges that he was thereafter placed in a cell in the A4 unit without being given a shower until the following morning. (*Id.* at 6). He further claims that, despite filing his grievance and a complaint pursuant to the Prison Rape Elimination Act ("PREA"), he "has gotten no relief or justification for these events." (*Id.*) Plaintiff further claims that he sought help from C.O. Payne, but heard nothing from

---

[3] Attached to Plaintiff's Response to the Defendants' motion for summary judgment is a March 8, 2019 (almost six months after the events in question) medical record from Dr. Rodhan Khthir, with Marshall Internal Medicine, indicating that Plaintiff was diagnosed with Graves' Disease in 2004, and that he reported having an unspecified "eye disease secondary to Graves' Disease with history of swelling and pain no active symptoms now." (ECF No. 36, Attach. 1 at 18). Beyond this record, Plaintiff provides no other material evidence of his medical condition at the time of, or since, these events and any other evidence of his alleged injuries and damages, including no expert opinions or testimony to support his claims.

him, and that his family also called and spoke with Captain Thompson ("Thompson"), who allegedly failed to respond to his grievances and failed to investigate the issues. (*Id.*)

As demonstrated by video evidence produced by Defendants, and as further reflected in Incident Report No. 18092006 prepared by Corporal Rhonda King, Plaintiff repeatedly demanded to have a blood pressure check and, upon reaching the booking counter, he grabbed his chest and slid to the floor behind the counter. (ECF No. 28, Ex. 1, beginning at approximately 9:13:05 p.m.; Ex. 2 at 10). Although he was told that he would be seen by someone from the medical unit after he changed clothes, Plaintiff refused the order to get up and walk to the bathroom and continued to demand to see medical. He was then helped up and escorted into the booking area bathroom where he was again directed to change his clothes, but he failed to comply with that order. (*Id.*, Ex. 1, beginning around 9:14:32 p.m.).

As further reflected on the video and in each of the incident reports, officers brought Plaintiff back out to the booking counter, where Nurse Kadee Damron took his blood pressure and confirmed that his vitals were fine. (ECF No. 28, Ex. 1 at approximately 9:18:10 p.m.; Ex. 2 at 5, 8-11). Plaintiff was then taken back into the bathroom, but he continued to refuse to change into the suicide smock. (ECF No. 28, Ex. 1, beginning around 9:19:02 p.m.; Ex. 2 at 5, 8-11). According to incident reports completed by the correctional officers who were in the bathroom, Plaintiff continued to refuse multiple orders to change his clothes. This is further confirmed by the audio portion of the video evidence. The incident reports further confirm that Slone deployed a half burst of MK-4 Foam, a chemical agent ("OC spray"). When Plaintiff continued to refuse orders to change his clothes, Slone deployed a second half burst of MK-4 Foam. (ECF No. 28, Ex. 2 at 5-9).

5

According to the incident reports, Plaintiff still failed to comply, so officers proceeded to restrain him on the ground, removed his clothes and placed him in the suicide smock. (*Id.*) He was then escorted out of the bathroom and taken to the medical unit to be decontaminated and assessed. (ECF No. 28, Ex. 1, between 9:21:50 and 9:25:00 p.m.; Ex. 2 at 5, 8-11). Following that assessment, Plaintiff was taken to the recreation yard in order to get some fresh air. Then, he was taken to the A4 pod and placed in a cell for observation. (*Id.*, Ex. 1; Ex. 2 at 5, 8-11). An investigation of this incident by Captain Mason, who is not a defendant herein, determined that this use of chemical agents against Plaintiff was a needed spontaneous use of force that was applied in good faith. (ECF No. 28, Ex. 2 at 3).

### III. STANDARDS OF REVIEW

A.  Summary Judgment under Rule 56.

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim. *Celotex,* 477 U.S. at 322-23. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." *Brown v. Showboat Altantic City Propoco, LLC*, No. 08-5145, 2010 WL 5237855, *2 (D.N.J. Dec. 16, 2010) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, "the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Id.* (citing *Anderson*, 477 U.S. at 256-57). Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 247-48.

A court must not resolve disputed facts or weigh the evidence and may not make determinations of credibility. *Russell v. Microdyne Corp., 65 F .3d* 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.,* 84 F. Supp.2d 751 (N.D.W. Va. 2000).

B.     Dismissal under 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

Where, as here, a prisoner is proceeding *in forma pauperis*, this court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. §§ 1915(e) and 1915A. The court must "dismiss a complaint filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)). That section also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii). A similar screening provision governs all prisoner complaints filed against government entities. 28 U.S.C. § 1915A.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to liberally construe such complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, this liberal construction requirement does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this

8

requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, *supra*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant law]" will survive a motion to dismiss. *Id*. at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). Moreover, a complaint must state more than "labels and conclusions" and a claim should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in

the complaint as true and in the light most favorable to the plaintiff, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

### IV. DISCUSSION

A. There is a lack of evidence to demonstrate a Fourteenth Amendment violation by C.O. Slone.

Because Plaintiff was a pre-trial detainee at the time of these events, his claim that Slone used excessive force against him is governed by the Due Process Clause of the Fourteenth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015). To succeed with such a claim, Plaintiff must demonstrate that "the force purposefully or knowingly used against him was 'objectively unreasonable.'" *Id*. at 396-97.

A determination of whether conduct is objectively reasonable "turns on the 'facts and circumstances of each particular case[]' and '[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Officers facing prison disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id*. at 397. In assessing those circumstances, courts may consider, among other things, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. The court must also consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," and defer to policies and

10

practices that jail officials determine "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540 (1979).

It is undisputed that Plaintiff failed to comply with repeated orders to change out of his clothes into the suicide smock, which is evident from the video and audio evidence and the incident reports offered by Defendants. Defendants assert that "[t]he incident reports of Officers Jason Leach, Tony Kirkwood, and Rhonda King are consistent that Plaintiff refused to change his clothes and was causing an ongoing, and deliberate disturbance when officers were simply following the protocol to place Plaintiff on suicide watch." (ECF No. 29 at 3).

Such evidence further confirms that, before any force was used against Plaintiff, the correctional staff brought him back out of the booking area bathroom to be assessed by medical staff and his vitals were determined to be normal; yet, thereafter, he continually failed to comply with the orders to change his clothes. While there is no visual evidence of the events that transpired in the booking area bathroom, the incident reports and the audio evidence confirm that Plaintiff continued to refuse those orders. Under those circumstances, Slone determined that the use of a chemical agent and the restraint of Plaintiff was necessary to gain his compliance and restore order to the unit and a post-incident review determined that Slone's use of force was reasonable and necessary under the circumstances. Plaintiff has failed to proffer sufficient evidence to demonstrate that this use of force was objectively unreasonable.

The undisputed evidence further demonstrates that, once Plaintiff was placed in the suicide smock, he was again assessed by medical staff, decontaminated, and taken to the recreation yard where he was walked around for a few minutes to get some fresh air, before being escorted to the A4 pod and placed in a cell for monitoring. Defendants'

11

Memorandum of Law further states:

> The findings of Captain Mason, who investigated the use of force, were that the use of OC spray was done to restore order, was a spontaneous act that was required and commensurate to the force necessary, and that the force was used in good faith . . . . All material evidence shows that Plaintiff did not respond to clear verbal instructions to change his clothing or repeated warnings which preceded the deployment of OC spray. Further, the incident reports note that Plaintiff escalated his active resistance while in the changing room making the use of force necessary. Plaintiff has produced no evidence that Defendant Slone used any force other than deploying the OC spray, as other officers changed Plaintiff's clothing.

(ECF No. 29 at 3).

"The summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). Here, despite being repeatedly advised of the type of evidence that must be offered to rebut summary judgment, Plaintiff has offered no concrete evidence, beyond his bald, self-serving allegations, to support his contentions that Slone choked him, punched him, or rammed his head repeatedly into the wall. It is Plaintiff's burden to come forward with more than a scintilla of evidence to satisfy his burden of proof, which he has failed to do here. Consequently, there is an absence of evidence to create a *genuine* issue of material fact, and the undisputed evidence supports a finding that the force used by Slone was objectively reasonable under the circumstances.

Thus, based upon the undisputed evidence of record, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and C.O. Slone is entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment claim against him arising out of the use of force against the Plaintiff on September 20, 2018.

B. There is an absence of evidence to establish that C.O. Payne and Captain Thompson violated Plaintiff's constitutional rights.

Liberally construed, Plaintiff's claims against C.O. Payne and Captain Thompson are grounded in their alleged failure, as supervisors, to properly handle and investigate his grievances and PREA complaint. Neither of these defendants was personally involved in the events on September 20, 2018. Thus, at best, the facts in the record, taken in the light most favorable to Plaintiff, suggest that Payne and Thompson failed to respond to and properly investigate Plaintiff's grievances about this use of force and his PREA complaint concerning Kirkwood's alleged touching of his genitals while assisting with his clothing change.

However, as noted in Defendants' Memorandum of Law, these defendants cannot be held liable based upon a theory of vicarious liability or *respondeat superior*. Moreover, "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Thus, there is "no fundamental right to a grievance system nor is there a fundamental right requiring prison administrators [to] investigate prisoner complaints." *McNeill v. Poole*, No. 1:17-cv-924, 2020 WL 3960951, at *5 (M.D.N.C. July 13, 2020) (quoting *Mitchell v. Murray*, 856 F. Supp. 289, 294 (E.D. Va. 1994)); *see also Boose v. Adkins,* No. 3:18-cv-01480, 2020 WL 3086885, at *20 (S.D.W. Va. May 20, 2020) (Plaintiff "has no federal or constitutional right to a particular type of investigation or investigatory practice."), *report and recommendation adopted*, No. 3:18-cv-1480, 2020 WL 3078333 (S.D.W. Va. June 10, 2020); *Jones v. Ervin*, No. 2:19-cv-385-RMG, 2019 WL 2241860, at *2 (D.S.C. May 24, 2019) (allegations that defendants

"ignored [plaintiff] and failed to investigate [his retaliation claim], do not make out a § 1983 claim"); *Battle v. N. Carolina Dep't of Pub. Safety*, No. 1:17-cv-174-FDW, 2018 WL 4620619, at *8 (W.D.N.C. Sept. 26, 2018) ("Because there is no constitutional right to an investigation, Plaintiff has failed to state a claim for § 1983 relief against these Defendants for failure to investigate, and this claim will be dismissed.").

Moreover, as noted by Defendants, there is no federal constitutional right of access to grievance procedures. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (no constitutional right was violated by defendant's failure, if any, to process all of the grievances [plaintiff] submitted for consideration); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991) (prison regulations creating administrative remedy procedures do not create a liberty interest; prisoner's right is for access to the courts, which is not compromised by prison's refusal to entertain grievance). (ECF No. 29 at 12). The Defendants' Memorandum of Law further asserts:

> [E]ven if Plaintiff had developed evidence that Payne and Thompson did not follow the [SCRJ's] grievance procedure it would not give rise to a § 1983 claim.

(*Id.* at 12-13). Consequently, because there is no clearly-established right implicated, Defendants Payne and Thompson further assert that they are entitled to qualified immunity on Plaintiff's claims against them. *See Pearson v. Callihan,* 555 U.S. 223, 231-32 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013) ("Because qualified immunity is an immunity from suit rather than merely a defense to liability, such immunity effectively is lost if a

14

court erroneously permits a case to proceed to trial."). (ECF No. 29 at 13-17).

Accordingly, to the extent that Plaintiff claims that Defendants Payne and Thompson failed to properly investigate his prison grievances, there is no clearly-established constitutional right to participation in the grievance process or for investigation thereof, and Plaintiff's claims against these defendants fail as a matter of law. Therefore, there is no genuine issue of material fact and Defendants Payne and Thompson are entitled to judgment as a matter of law on Plaintiff's claims against them.

  C. The Complaint fails to state a plausible claim for relief against Kirkwood.

Despite not being correctly served with process and having not made an appearance herein, Plaintiff's claim against should also be dismissed for failure to state a plausible claim upon which relief can be granted. Taking the Complaint's allegations against Kirkwood as true, Plaintiff alleges that, at the direction of Slone, he pulled Plaintiff's underwear off while changing him into the suicide smock. Again, because Plaintiff was a pre-trial detainee, the court views Plaintiff's allegations through the lens of the Fourteenth Amendment Due Process Clause. As previously noted, to state a plausible due process claim, the conduct of the defendant must be "objectively unreasonable" based upon the specific facts and circumstances presented to the officer. To be actionable, the alleged sexual contact must be incompatible with "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25 (1993).

Plaintiff's Complaint asserts nothing more than an inadvertent touching of Plaintiff's genitals and the brief exposure thereof to others in the room as they were changing his clothes. These facts fail to rise to the level of an actionable constitutional violation. *See, e.g., Watson v. Wingard,* No. 3:16-cv-00055, 2018 WL 2108316, at *4 (W.D. Pa. Jan. 31, 2018) (collecting cases), *report and recommendation adopted,* 2018

WL 2107773 (W.D. Pa. May 7, 2018), *aff'd,* 782 F. App'x 214 (3d Cir. 2019) (affirming dismissal of alleged sexual abuse claim that occurred during a pat-down search where contact with inmate's genitals was incidental to a legitimate penological purpose); *see also Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (inmate did not sufficiently alleged a constitutional violation where the correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Young v. Brock*, No. 10-cv-01513, 2012 WL 385494, at *4 (D. Colo. Feb. 7, 2012) (allegations that inmate was subjected to unnecessary and unwelcomed sexual touching by a prison guard in the course of a single pat-down search did not state a constitutional claim); *Pantusco v. Sorrell*, No. 09-cv-3518, 2011 WL 2148392, at *7–8 (D.N.J. May 31, 2011) (Eighth Amendment claim failed because a single instance of groping during a routine pat-down frisk did not amount to cruel and unusual punishment); *Escobar v. Reid*, 668 F. Supp.2d 1260, 1278, 1295–96 (D. Colo. 2009) (a guard's alleged suggestive, sexual touching of an inmate did not state a constitutional violation); *Williams v. Anderson*, No. 03-cv-3254, 2004 WL 2282927, at *4 (D. Kan. Sept. 7, 2004) (finding no Eighth Amendment violation where a prison guard grabbed a pre-trial detainee's buttocks, exposed his genitals to the inmate, and made crude sexual remarks). Based upon this authority, which the undersigned finds to be instructive, and the undisputed evidence of record, Kirkwood's conduct was not objectively unreasonable under the circumstances alleged and, therefore, Plaintiff has failed to state a plausible claim for relief against Kirkwood.

## V. RECOMMENDATIONS

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendants' Motion for Summary Judgment (ECF No. 28) and dismiss, as a matter of law, Plaintiff's claims against Defendants C.O. Slone, C.O.

16

Payne, and Captain Thompson. It is further respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the claim against C.O. Kirkwood, pursuant to U.S.C. §§ 1915A and 1915(e)(2)(B), for failure to state a claim upon which relief can be granted. By separate order, the undersigned will address further action with respect to the claims against defendants Jessica Thornhill and Nurse Kadee Damron.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

<u>August 11, 2021</u>

Dwane L. Tinsley
United States Magistrate Judge